**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Case No. 03 CV 01042 MJG |
|  | ) | |
| AGORA, INC., PIRATE INVESTOR, | ) | |
| LLC and FRANK PORTER STANSBERRY | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO**
**EXCLUDE THE REPORT AND TESTIMONY OF DEFENDANTS' PUBLISHING**
**INDUSTRY EXPERT DAVID L. NELSON**

TABLE OF CONTENTS

SUMMARY OF NELSON'S OPINIONS ............................................................................2

ARGUMENT ...................................................................................................................3

    I.     STANDARDS GOVERNING THE ADMISSION OF
          EXPERT TESTIMONY ....................................................................................3

    II.    NELSON'S REPORT AND TESTIMONY DO NOT
          MEET THE DAUBERT RELIABILITY STANDARD .............................6

    III.   NELSON'S REPORT AND TESTIMONY WILL NOT
          ASSIST THE TRIER OF FACE AND IS NOT RELEVANT ...................9

          A.    NELSON OFFERS NO OPINION AS TO
                   FALSE STATEMENTS OR OMISSIONS ...................................10

          B.    NELSON OFFERS NO OPINION AS TO
                   MATERIALITY ...........................................................................10

          C.    NELSON OFFERS NO OPINION REGARDING
                   SCIENTER ..................................................................................11

          D.    NELSON OFFERS NO OPINION REGARDING
                   THE "IN CONNECTION WITH" REQUIREMENT ...................12

          E.    NELSON OFFERS NO EVIDENCE THAT WILL
                   ASSIST THE TRIER OF FACT TO UNDERSTAND
                   THE EVIDENCE IN THIS CASE .................................................12

    IV.   NELSON IS NOT QUALIFIED TO OFFER OPINIONS
          REGARDING THE FINANCIAL NEWSLETTER INDUSTRY ............16

CONCLUSION ................................................................................................................20

TABLE OF AUTHORITIES

CASES                                                                                    PAGE

Adalman v. Baker, Watts & Co., 807 F.2d 359 (4th Cir. 1986) .......................................15

Basic, Inc. v. Levinson, 485 U.S. 224 (1988)...................................................................10

Chasins v. Smith, Barney & Co., 438 F.2d 1167 (2d Cir. 1970)......................................13

Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579 (1993)..................................3, 4, 5, 6

Dinco v. Dylex Ltd., 111 F.3d 964 (1st Cir.1997)............................................................15

Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000) ........................................................3

Garlinger v. Hardee's Foodsystems, Inc., 16 Fed. Appx. 232 (4th Cir. 2001)................5, 9

Giddings v. Bristol-Myers Squibb Co., 192 F. Supp. 2d 421 (D. Md. 2002).....................3

Hardin v. Ski Venture, 50 F.3d 1291 (4th Cir. 1995) ......................................................4, 9

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) .................................................4, 6, 8

Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977)...............................15

Oglesby v. General Motors, Corp., 190 F.3d 244 (4th Cir. 1999)......................................5

Ottmann v. Hanger Orthopedic Group, Inc., 353 F. 3d 338 (4th Cir. 2003) .....................11

Panter v. Marshall Field & Co., 646 F.2d 271 (7th Cir. 1981).........................................15

SEC v. Zandford, 535 U.S. 813 (2002)..............................................................................10

Shreve v. Sears, Roebuck & Co., 166 F. Supp. 2d 378 (D. Md. 2001) ...........4, 5, 6, 16, 18

Stepney v. Dildy, 128 F.R.D. 77 (D. Md. 1989)..............................................................5, 14

U.S. v. Dorsey, 45 F.3d 809 (4th Cir. 1995)....................................................................5, 13

U.S. v. Bilzerian, 926 F.2d 1285 (2d Cir.).........................................................................15

Wheeler v. John Deere Co., 935 F. 2d 1090 (10th Cir. 1991) ............................................4

STATUTES AND REGLULATIONS                                                   PAGE

Exchange Act of 1934, 15 U.S.C. 78a *et seq*:
    § 10(b); 15 U.S.C. 78j ..................................................................................................9, 11

17 C.F.R. § 240.10b.5 ...............................................................................................................9, 11

FEDERAL RULES                                      PAGE
Fed. R. Civ. P. 26(a)(2)........................................................................................................2
Fed. R. Civ. P. 26(a)(2)(B) ..................................................................................................2
Fed. R. Evid. 702 ............................................................................................3, 4, 5, 9, 14, 16
Fed. R. Evid. 704(a)..........................................................................................................15

Plaintiff United States Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion *in limine* to exclude the report and testimony of defendants' publishing industry expert, David L. Nelson, ("Nelson").  Nelson's report and testimony present only inadmissable, unreliable and irrelevant evidence that will not assist the trier of fact.  Moreover, Nelson's opinion should be excluded because it is misleading and relates to issues about which Nelson lacks expertise.

## SUMMARY OF NELSON'S OPINIONS

Pursuant to Fed. R. Civ. P. 26(a)(2), Nelson submitted a six page Report containing a complete statement of all opinions to be expressed at trial.  See FED. R. CIV. P. 26(a)(2)(B); Expert Report, attached hereto as Ex. 1; see also Deposition of David L. Nelson ("Nelson Dep."), attached hereto as Ex. 2 at  8 (stating that his Expert Report contained all the opinions and conclusions Nelson intends to testify about at trial).  Nelson's report contains no summary of his opinions or cogent statement as to the opinions he intends to offer at trial.  See generally Ex. 1.  The report consists primarily of newsletter excerpts Nelson reproduced from a collection of Internet publications Nelson collected after spending two to three hours reviewing financial newsletters on the Internet.  See Ex. 1 at 3-4; Ex. 2, Nelson Dep. at 84.  In the report, itself, Nelson states that he "plan[s] to provide a dispassionate analysis of Agora's materials and an opinion as to whether they posed such a problem that the government would seek to penalize the company after it had engaged in the flow of information, ideas and opinion."  Ex. 1 at 1.  Nelson concludes his analysis by opining that he "believe[s] that Agora's 2002 promotion for its special report on USEC falls well within the industry norm."  Id. at 4.  Nelson ends his report with the statement that he does "not feel that either the Agora promotional piece or the special report

2

itself could possibly mislead this audience. And to interfere with that publisher-to-reader relationship, I believe, would be to interfere with the publishing protection that our Founding Fathers sought by providing constitutional privilege to those who seek to report, analyze and distribute information and points of view." Ex. 1 at 6.

Those opinions, however, are nothing more than Nelson's unsupported speculation and belief. As detailed below, Nelson failed to apply the required level of intellectual rigor to his analysis of Agora's publications. Nelson lacks the relevant qualifications to offer such opinions and his report is completely devoid of meaningful analysis. As a result, this Court should exclude Nelson's Expert Report and testimony.

ARGUMENT

## I.   STANDARDS GOVERNING THE ADMISSION OF EXPERT TESTIMONY

Federal Rule of Evidence 702 provides:

Testimony by Experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit. Giddings v. Bristol-Myers Squibb Co., 192 F. Supp. 2d 421, 425 (D. Md. 2002) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590-91 (1993)); see also Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The proponent of the proffered expert testimony bears the burden of

3

establishing its admissibility by a preponderance of the evidence.  Daubert, 509 U.S. at 592 n.10.

In the seminal case of Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court directed district court judges to perform a screening function, to insure that evidence presented by expert witnesses is relevant, reliable, and helpful to the jury's evaluation of such evidence.  Daubert, 509 U.S. at 597.  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court clarified that Daubert's gatekeeping obligation covered not only scientific, but also non-scientific testimony.  Kumho, 526 U.S. at 151.  In order to be admissible under Rule 702 and the standards set forth in Daubert, expert testimony must (1) concern scientific, technical, or other specialized knowledge; (2) the knowledge must assist the trier of fact to understand or resolve a fact at issue; and (3) the witness must be qualified as an expert.  See Daubert 509 U.S. at 591-92; FED. R. EVID. 702.  The touchstone of admissibility is whether the testimony will assist the trier of fact.  Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1298 (4th Cir. 1995).

In order to be qualified as an expert, the "fit" between an expert's specialized knowledge and experience and the issues before the court need not be exact.  See e.g. Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991).  However, a purported expert's opinion is only helpful to the trier of fact "to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."  Shreve v. Sears, Roebuck & Co., 166 F. Supp. 2d 378, 393 (D. Md. 2001) (quoting United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991)).

With respect to the fit prong, the Fourth Circuit has stated that "[t]he consideration of relevance requires the district court to determine whether the testimony 'fits' the instant case; not all reliable expert testimony is relevant expert testimony." Garlinger v. Hardee's Foodsystems, Inc., 16 Fed. Appx. 232, 235 (4th Cir. 2001). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591. "In other words, Fed. R. Evid. 702 requires a valid scientific connection between the expert's testimony and the pertinent inquiry before the court as a precondition of admissibility." Garlinger, 16 Fed. Appx. at 235.

Furthermore, "[t]he Fourth Circuit has stated that: 'Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance.'" Stepney v. Dildy, 128 F.R.D. 77, 79 (D. Md. 1989) (quoting Scott v. Sears, Roebuck and Co., 789 F.2d 1052, 1055 (4th Cir. 1986)); see also U.S. v. Dorsey, 45 F.3d 809, 814 (4th Cir. 1995) ("in determining whether a particular expert's testimony is sufficiently helpful to the trier of fact to warrant admission into trial, the district court should consider whether the testimony presented is simply reiterating facts already 'within the common knowledge' of the jurors."). "In all cases, however, the district court must ensure that it is dealing with an expert, not just a hired gun." Shreve 166 F. Supp. 2d at 394 n.8 (quoting Tyus v. Urban Search Mgmt., 102 F.3d 256, 263 (7th Cir. 1996)).

Regarding the reliability prong, an expert's opinion is reliable if the expert's testimony is based on scientific knowledge, that is, whether the expert's conclusions are grounded in the methods and procedures of science and reflect more that his or her subjective belief or unsupported speculation. Oglesby v. General Motors, Corp., 190 F.3d 244, 250 (4th Cir. 1999)

("A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.")  In determining whether the expert's opinion is reliable, the district court should evaluate the following Daubert factors:  (1) Whether a theory or technique . . . can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique enjoys general acceptance within a relevant scientific community.  Shreve 166 F. Supp. 2d at 394 (citing Daubert, 509 U.S. at 592-94).  These factors are meant to be helpful, not definitive.  Id.

As set forth more fully below, Nelson's report and testimony fail to satisfy the three prerequisites of admissibility: qualifications, reliability and fit.  Consequently, this Court should exclude Nelson's testimony and report.

## II.    NELSON'S REPORT AND TESTIMONY DO NOT MEET THE DAUBERT RELIABILITY STANDARD

When the factual basis, data, principles or methodology underlying expert testimony, or their application, is called into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."  Kumho Tire, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592).  The purpose of this requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 152.  In order to determine the reliability of the

6

methodology used by Nelson in arriving at his expert opinions, the methodology must be examined in light of the Daubert factors.

In order to prepare his report Nelson reviewed the materials provided to him by defendants' counsel. Ex. 2, Nelson Dep. at 82. Those documents failed to include the deposition of any witness, including Porter Stansberry. Id. at 153-54. In addition to reviewing documents provided by counsel, Nelson looked at the web sites of some financial newsletters.

> Q: Other than the review of these documents that are listed on Exhibit 121 (list of documents provided to Nelson by defense counsel) what other research did you do in preparation of Exhibit Number 119 (Nelson's Report)?
> A: Okay. Then I went on the web, you know, and I pulled down some sites of financial newsletter companies and, you know, got into a pattern which clearly I may have spent too much space on it but clearly my written opinion shows that I found a familiar theme of what I'm going to call hyped-up language. . . .
> Q: How much time did you spend looking at newsletters on the web?
> A: The gentleman to my right who paid my fee would know precisely, but I'm going to estimate maybe two to three hours.

Ex. 2, Nelson Dep. at 82-84. Other than the newsletter excerpts reproduced in his report, Nelson looked at three or four other financial newsletters. Id. at 128. In addition to the two or three hours spent looking at financial newsletters on the web, Nelson indicated he spent a few hours reviewing how to guides on the newsletter industry and a book provided to him by defense counsel called The Wall Street Gurus. Id. at 84, 86. Nelson never visited Agora. Id. at 52. Other than the information he received from counsel, Nelson has no idea how Agora operates. Id. at 53. Nelson did not review any Agora promotions, other than the Super Insider Tip Email. Id. at 118. He has not seen any Agora newsletters other than the USEC Special Report. Id. at 117-18. Nelson is not familiar with Agora's sales practices. Id. at 125.

Although Nelson also refers to several news articles that make positive reference to Agora in his report, those articles were provided to Nelson by Defendants. When asked if he

performed any research to determine whether there were any negative articles regarding Agora, Nelson replied "I didn't even Google Agora, nor have I today." Id. at 149.  Nelson simply accepted the information provided by defendants without question.  This is hardly the level of intellectual rigor Daubert requires.

Nelson's lack of intellectual rigor is not surprising.  During his deposition, Nelson demonstrated a clear bias for the defendants.  The purpose of Daubert's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. Throughout his deposition Nelson explained that he was testifying on behalf of the defendants because of a strong belief in their litigation position.  Nelson's bias prevented him from exercising the level of intellectual rigor required by Daubert.

As stated by Nelson during his deposition, "[in] fact, it was the main reason I got attracted to the case.  I don't do a lot of this stuff, but I feel that – I don't like the feeling of a governmental agency looking at and making judgment on the quality of journalistic content.  It goes against everything that I've done, studied, and been about going back to 1959 when I had my first article published. . . . I felt a sense of obligation to come forward in this case because I don't like it.  I don't like the situation." Ex. 2, Nelson Dep. at 23-24.   Nelson further explained "[s]o when I said that I felt an activist urge to get involved in this case, I was being 100 percent honest." Id. at 53.  "So as a journalist, you know, I think it's part of our duty and your duty and combined to keep them [referring to pubic relations personnel] honest. . . .  And that's why I am

8

such a strong advocate of First Amendment rights.  I mean, I'm an absolutist on that."  Id. at 104-05.

The forgoing emphasizes that Nelson agreed to testify on defendants behalf not as an expert to engage in rigorous analysis.  Instead, Nelson simply adopted defendants' position because he does not think the Commission should regulate print media.  The standards of Daubert require much more.

## III.    NELSON'S REPORT AND TESTIMONY WILL NOT ASSIST THE TRIER OF FACT AND IS NOT RELEVANT.

Nelson's Report and Testimony will not assist the trier of fact and are not relevant.  "The relevancy inquiry assures that the expert's proposed testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue' as required by Fed. R. Evid. 702."  Garlinger, 16 Fed. Appx. at 234.  The touchstone of admissibility is whether the testimony will assist the trier of fact.  Hardin, 50 F.3d at 1298  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  Daubert, 509 U.S. at 591.  "In other words, Fed. R. Evid. 702 requires a valid scientific connection between the expert's testimony and the pertinent inquiry before the court as a precondition of admissibility."  Garlinger, at  235.  Nelson's Report and Testimony does not assist the Court in understanding the evidence or determining a fact in issue.

The Commission's Complaint asserts a single cause of action against defendants, namely a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  In order to establish that defendants violated Section 10(b) and Rule 10b-5, the Commission must prove defendants (1) made a false statement or omission of material fact (2) with scienter (3) in

connection with the purchase or sale of a security.  See e.g. SEC v. Zandford, 535 U.S. 813, 819

(2002).

### A.    Nelson offers no opinion as to false statements or omissions.

Nelson has no relevant information regarding the factual accuracy of the Super Insider

Tip Email or the USEC Special Report.  During his deposition Nelson testified as follows:

Q:  Have you done any research or analysis to determine whether the information in
Exhibit 1 (the Super Insider Tip Email) is accurate?
A:  [by Nelson] No, I have not.
Q:  Have you done any research or analysis to determine whether the information in
Exhibit 2 (the USEC Special Report) is accurate?
A:  No, I have not.
Q:  So you do not intend to offer an opinion as to the factual accuracy of Exhibit 1?
A:  I'm not prepared to do that nor was I asked to do that.
Q:  And you don't intend to offer any opinion as to whether or not the information in
Exhibit 2 is factually accurate?
A: No, I don't plan to do that.
. . . .

Q:  And so you don't know whether either Exhibit 1 or Exhibit 2 contains any
misrepresentations?
A: I do not.

Ex. 2, Nelson Dep. at 35, 37.  Thus, Nelson offers no information that will assist the trier of fact

to determine whether defendants made any misrepresentations or omissions to investors.

### B.    Nelson offers no opinion as to materiality

Nelson also has no opinion regarding the materiality of any the misrepresentations the

Commission alleges were made by defendants.  According to the Supreme Court, "an omitted

fact [or misrepresentation] is material if there is a substantial likelihood that a reasonable

[investor] would consider it important" in deciding whether to purchase or sell securities.  Basic,

Inc. v. Levinson, 485 U.S. 224, 231 (1988) (citing TSC Industries, Inc. v. Northway, Inc., 426

U.S. 438, 449 (1976) and "adopt[ing] the TSC Industries standard of materiality for the § 10(b)

and Rule 10b-5 context").  Moreover, information is material if there is "a substantial likelihood

that the disclosure of the omitted fact would have been viewed by the reasonable investor as

having significantly altered the 'total mix' of information made available."  Id. at 231-32 (quoting

TSC Industries, Inc., 426 U.S. at 449).

In his deposition, Nelson concedes he does not understand the term materiality as it

relates to securities law:

> Q: Do you understand the term "material" as it relates to securities fraud actions?
> A:  No.
> Q: So you have no opinion with respect to whether the information contained in Exhibit 1 or Exhibit 2 is material?
> A:  Well, I mean I know what the word material means in terms of its application to journalism or economics, but I don't have any opinion whatsoever what it means in terms of securities law.

Ex. 2, Nelson Dep. at 37-38.  As a result, Nelson's testimony is not helpful to the trier of fact in

determining whether defendants' misrepresentations were material.

### C.     Nelson offers no opinion regarding scienter

The Commission must also prove that defendants acted with scienter.  Zandford, 535

U.S. at 813.  Scienter "refers to a mental state embracing an intent to deceive, manipulate or

defraud."  Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 343 (4th Cir. 2003)

(quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12).  Nelson is similarly silent

with respect to Porter Stansberry's state of mind:

> Q: Do you intend to offer any opinion as to what Mr. Stansberry's state of mind was at the time he wrote either Exhibit 1 or Exhibit 2?
> A:  I don't know the individual, so I could not offer such an opinion.  I've never met him.  I've never talked to him.

Ex. 2, Nelson Dep. at 38.  Likewise, Nelson has no opinion regarding the state of mind of anyone

affiliated with Agora:

Q: You have any opinion as to the state of mind of anyone affiliated with Agora as of the time that Exhibit 1 or Exhibit 2 was published?
A: No way. I didn't even know the company existed at that time.

Id. Again, Nelson's views will not assist the Court in any way.

### D.     Nelson offers no opinion regarding the "in connection with" requirement

The Commission must also prove that defendants conduct occurred "in connection with" the purchase or sale of a security. Zandford, 535 U.S. at 813. Nelson offers no evidence with respect to that element of the Commissions case:

Q: Do you have any understanding of what the term "in connection with" means as it relates to a securities fraud claim?
A: I do not.

Ex. 2, Nelson Dep. at 38-39. Consequently, Nelson has no information that will assist the trier of fact in resolving any element of the Commission's cause of action against defendants.

### E.     Nelson offers no evidence that will assist the trier of fact to understand the evidence in this case.

Although Nelson's report contains no summary of his opinions or cogent statement of the opinions he intends to offer at trial, Nelson stated that he was an expert regarding the profession of journalism. Ex. 2, Nelson Dep. at 12. "I would say everything from economics to ethics that pertain to professional journalism." Id. When probed further, Nelson indicated he intended to testify at trial regarding data gathering techniques and marketing principles as they relate to professional journalism. Id. at 22-23. Nelson confirmed during his deposition that his report represented a complete statement of all the opinions and conclusions he intends to testify about at the trial of this matter. Id. at 8.

Nelson's report provides limited detail regarding the opinions he intends to offer at trial. First, Nelson states: "Nonetheless, I plan to provide a dispassionate analysis of Agora's materials

12

and an opinion as to whether they posed such a problem that the government would seek to penalize the company after it had engaged in the flow of information, ideas and opinion." Ex. 1, Nelson Report at 1.

After reviewing several Internet newsletters, Nelson concludes that the rhetoric and language used by defendant is within the industry norms. Nelson states "In this context, I believe that Agora's 2002 promotion for its special report on USEC falls well within the industry norm." Ex. 1, Nelson Report at 4. Whether defendants practice complies with industry norms, however, is of no moment. See, In the Matter of Richard C. Spangler, Inc., 46 SEC 238, 251 n.55 (1976) ("[U]nder no circumstances... can he claim the existence of a general reprehensible practice to insulate himself from the effects of conduct which he knew or should have known operated as a fraud.") attached hereto as Exhibit 4; Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1171 (2d Cir. 1970). In other words, Defendants cannot avoid the consequences of their violations of the law by claiming everyone else does it.

Moreover, Nelson reaches his conclusion that the Super Insider Tip Email conforms to industry standards by comparing the language used by Agora to the promotional rhetoric used by other financial newsletter publishers. A simple comparison of the language used by Agora with that used by its competitors is something a layman could easily accomplish. See e.g. U.S. v. Dorsey, 45 F.3d 809, 812-15 (4th Cir. 1995) (excluding expert testimony regarding comparison of photographs because jurors could make comparison themselves). "Rule 702 makes inadmissible expert testimony as to a matter which is obviously within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." Stepney,128 F.R.D. at 79. Consequently, Nelson's opinion regarding the similarities between the Super

13

Insider Tip Email and other Internet solicitations is not admissible expert testimony.

Nelson concludes that he does "not feel that either the Agora promotional piece or the special report itself could possibly mislead this audience. And to interfere with that publisher-to-reader relationship, I believe, would be to interfere with the publishing protection that our Founding Fathers sought by providing constitutional privilege to those who seek to report, analyze and distribute information and points of view." Ex. 1, Nelson Report at 6. As set forth above, Nelson has absolutely no basis for this opinion. He testified he did not know whether the Super Insider Tip Email or the USEC Special Report contained false information. Ex. 2, Nelson Dep. at 35. Without knowledge of the factual accuracy of the information, Nelson cannot reliably testify regarding whether the audience was misled. Nelson further concedes he has no understanding of the level of accuracy readers of the Super Insider Tip Email expected:

> Q: So in your view readers expect a different level of accuracy in a promotional piece from a hard news piece?
> . . .
> A: . . . I can't give you the answer because I haven't done the research on the newsletter audience. . .

Id. at 72-73. Nelson simply does not know how the readers viewed the Super Insider Tip Email or the USEC Special Report.

More importantly, the extent of Constitutional protection afforded to the Super Insider Tip Email and USEC Special Report is a legal question. Nelson is not a legal expert. Id. at 23. Expert testimony is not permitted on legal questions. See, e.g., Dinco v. Dylex Ltd., 111 F.3d 964, 973 (1st Cir.1997) (expert cannot testify that plaintiffs reasonably relied on specific statements made to them; Rule 704(a) "is not a *carte blanche* for experts to substitute their views for matters well within the ken of the jury"); U.S. v. Bilzerian, 926 F.2d 1285, 1295 (2d Cir.

1991), cert. denied, 502 U.S. 813 (1991) (excluding former SEC Division Director from offering testimony on definition of "personal funds" as generally understood in the securities industry because it "related directly to the issue of whether Bilzerian's actual 13D disclosures complied with the legal requirements.  Thus, the expert testimony would have constituted an impermissible instruction on governing law."); Adalman v. Baker, Watts & Co., 807 F.2d 359, 368-70 (4th Cir. 1986) (excluding expert proffered to testify concerning the legal effect of securities law disclosure documents he had prepared); Panter v. Marshall Field & Co., 646 F.2d 271, 294 n.6 (7th Cir. 1981) (excluding expert testimony on the ordinary standards against which the actions of boards of directors and investment bankers would be measured as it would impinge on the function of the trial court) ; Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 508-12 (2d Cir. 1977) (Appeals Court held that the trial court had erred in permitting an expert on securities practices to testify regarding: the legal obligations of parties to a contract; the reasonableness of certain conduct; and the legal significance of various facts adduced at trial because "[i]t was testimony concerning matters outside his area of expertise" and invaded the province of the judge and jury. "The question of interpretation of the contract is for the jury and the question of legal effect is for the judge.  In neither case do we permit expert testimony."). Thus, the Court should not permit Nelson to opine as to whether the First Amendment protect Agora's publishing activities from regulation by the Commission.

## VI.     NELSON IS NOT QUALIFIED TO OFFER OPINIONS REGARDING THE FINACIAL NEWSLETTER INDUSTRY.

Nelson is not qualified to offer opinions regarding the financial newsletter industry.  "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas."  Shreve, 166 F. Supp. 2d at 391 (collecting cases).  "An expert's

15

opinion is helpful to the trier of fact, and therefore relevant under Rule 702, 'only to the extent

the expert draws on some special skill, knowledge or experience to formulate that opinion; the

opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather

than simply an opinion broached by a purported expert." Id. at 393 (citations omitted).  Nelson's

opinions regarding the financial newsletter industry are not expert opinions.

During his deposition, Nelson testified regarding his experience with the newsletter

industry.  None of that experience is relevant to the issues before this Court or qualifies Nelson

as an expert in the financial newsletter industry:

Q:  What experience do you have in the newsletter industry?
A: They approached me about ten years ago to put together a survey.
. . .
Q: You've told me about the survey that you performed ten years ago and we'll talk some more about that later.  What other experience have you had in the newsletter industry?
A:  Well, they've asked me to come to their conventions, to bring students out. . . . What else.  I get calls from the publishers all the time regarding recruitment, personnel.  I've been asked by the association to reconsider whether I would do another survey.
A:  . . . I would say my students have visited maybe 13 to 17 newsletter companies since that report came out and have done company profiles.
Q:  And have you personally also visited these newsletter companies?
A:  Not all of them.  Four or five. . . .
Q:  These four or five newsletter companies that you have visited, were any of them financial newsletters?
A:  Well some of them have financial newsletters.
. . . .
Q:  We've talked about your survey that you performed and your site visits to various newsletters.  Any other research, programs or services for the newsletter industry that you haven't already testified about this morning?
A:  Well, a couple of other – You know, they have this annual conference here in Washington.  So I ran a program for their personnel people on how to hire, train, and the care, feeding and maintenance of internists for summer employment.  Okay.  That was one.
I facilitated a discussion on ethical issues which steered more toward internal operations really hitting the diversity button and, you know, are you being sensitive to the promotion, retention, of basically minorities and women which they were not.
And then what else.  Well, I gave a speech after I wrote the report on what that meant on three occasions at their international meeting.  At Chicago Ragan Communications has an annual

16

event, and they were looking at the impact of the Internet on its business, and I facilitated that for a few dozen of the newsletter people who showed up.

That's about it.  It's not my only life.

Ex. 2, Nelson Dep. at 42, 47-48, 50-51, 99-100.  Nelson's limited experience hardly qualifies

him as an expert in the Internet financial newsletter industry.

More importantly, Nelson lacks experience in areas important to the inquiry before the

Court.  Nelson testified that he had never worked as a writer in the newsletter industry.  Id. at

46.  Nelson stated that in 1972 he wrote one article about a contractor that involved some

analysis of company records.  Id. at 56-57.  Other than the one article regarding a contractor that

Nelson wrote over thirty years ago, Nelson has not written any other articles incorporating any

financial analysis.  Id. at 58.  He has never written any pieces recommending a particular stock.

Id. at 60.  Nelson has not written a promotional editorial for a stock report.  Id. at 63.  Nor has he

had any oversight responsibilities for promotional pieces recommending stock purchases.  Id.

As set forth in Nelson's Curriculum Vita, Nelson is a professor at Northwestern

University.  See Curriculum Vita, attached hereto as Ex. 3.  Nelson has not worked at a

newspaper for over 20 years.  Id.  He has never been employed by an Internet publisher.  Id.   He

has no professional experience related to an Internet publication.  Id.

"The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him

to testify as an expert in all related fields."  Shreve, 166 F. Supp. 2d at 391.  In Shreve, the Court

precluded an "eminently qualified mechanical engineer and professor of mechanical engineering

whose courses include Machine Design and Mechanical System Failure Analysis" from

testifying as an expert witnesses on the safe design and operation of snow throwers because he

"had no professional experience with respect to the design, manufacture, operation, or safety of

17

outdoor power equipment, including snow throwers." Id. at 393.  Like the purported expert in

the Shreve case, Nelson has no experience that qualifies him as an industry specialist in the field

of financial publishing on the Internet.

Quite simply, Nelson lacks any relevant experience in the financial newsletter industry.

He has not worked in the financial newsletter industry.  Nelson has not written anything related

to stock recommendations or supervised the work of others who in the financial publishing

arena. As a result, he is not qualified to offer any opinions regarding the financial Internet

newsletter business.

Moreover, the opinions Nelson offers require expertise beyond that of Nelson.  For

example, Nelson opines that the Super Insider Tip Email and the USEC Special Report could not

mislead investors.  Ex. 1 at 6.  That opinion stands in sharp contrast to his deposition during

which Nelson admitted that he did not know whether either the Super Insider Tip Email or the

USEC Special Report contained inaccuracies.  Ex. 2, Nelson Dep. at 37.  Nelson cannot possibly

offer an opinion regarding whether the email or report misled anyone without first determining if

either document contained any false or misleading information.

In addition, Nelson offers opinions regarding whether the Commission should have a role

in regulating the print media and his belief that any such regulation would trample on First

Amendment freedoms.  Ex. 1 at 6.  Nelson is not an attorney and does not have any legal

training.  Ex. 2, Nelson Dep. at 23, 39.  He conceded in his deposition that he is not familiar with

the role several government agencies play in regulating publishers.  Id. at 104-07.  Nelson has

nothing more than a layman's understanding of the legal implications and consequences of

government regulation of the print media.  Nelson is not qualified to opine on the appropriate

nature and extent of the Commission's role or the scope of its authority in regulating fraudulent statements made in connection with an offer, purchase or sale of a security.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests the Court to grant its motion *in limine* and exclude Nelson's report and testimony in their entirety.  His subjective conclusions and haphazard analysis are unreliable and, as such, will not be helpful to the trier of fact.

Respectfully submitted this 1st day of March 2005.


　　　　　　　　　　　　 __/S/__ Karen L. Martinez _
                        Karen L. Martinez
                        Thomas M. Melton
                        Attorneys for the Plaintiff
                        Securities and Exchange Commission
                        15 West South Temple, Suite 1800
                        Tele: (801) 524-5796
                        FAX: (801) 524-5262

19